IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOAQUIN RETANA, individually and on behalf of M.R., a minor, <br><br> Plaintiff, <br><br> vs. <br><br> ARCHER DANIELS MIDLAND COMPANY; ADM OMNIBUS HEALTH AND WELFARE PLAN FOR SALARIED EMPLOYEES; and HEALTH CARE SERVICE CORPORATION, <br><br> Defendants. | Case No. 1:25-cv-12840 |

## COMPLAINT

Now comes the Plaintiff, Joaquin Retana, individually and on behalf of M.R., a minor, by attorney MICHAEL BARTOLIC of BARTOLIC LAW, and complaining against the Defendants, Plaintiff states:

### INTRODUCTION

1. This is a dispute regarding a denied claim for surgery under an employer's health benefit plan where the plan's claim administrator authorized the surgery and determined it was medically necessary, but then denied payment for the surgery as not medically necessary due to its own policy change on medical necessity coming after the time of the approval, without any warning to Plaintiff the policy on medical necessity had changed since the time it determined the surgery was medically necessary.

2. Plaintiff brings this action pursuant to Employee Retirement Income Security Act of 1974 (hereafter "ERISA"), 29 U.S.C. § 1132(a), seeking health benefits due pursuant to the terms of an employee benefit plan, to enforce rights under the plan, to estop the plan and its claim

1

administrator from denying coverage under the plan, and for breach of fiduciary duty for failing to communicate to Plaintiff the claims administrator's medical policy on medical necessity of the procedure had changed. Plaintiff also seeks statutory penalties against the plan's administrator for failure to provide plan documents under 29 U.S.C. § 1132(c), as well as attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).

## THE PARTIES

3. Plaintiff is an employee of Archer-Daniels-Midland Company (hereafter "ADM"). ADM sponsors an employee welfare benefit plan, as that term is defined in 29 U.S.C. § 1002(1), called the ADM Omnibus Health and Welfare Plan for Salaried Employees ("the Plan"), which provides, among other things, health insurance benefits to certain employees and their spouses and dependents. Incident to employment with ADM, Plaintiff received health insurance benefits under the Plan for himself and his family. Plaintiff's daughter, M.R., a minor, is a covered dependent or beneficiary under the Plan.

4. Defendant Archer Daniels Midland Company ("ADM") is the sponsor and administrator of the Plan. ADM is responsible for paying costs of benefits under the Plan incurred by participants and covered dependents and beneficiaries, and is responsible for complying with requests from participants for documents and instruments governing the Plan.

5. The ADM Omnibus Health and Welfare Plan for Salaried Employees ("the Plan") is an employee welfare benefit plan, as that term is defined in 29 U.S.C. § 1002(1), providing health and medical benefits to participants and their covered dependents and beneficiaries. At all relevant times, the Plan covered Plaintiff and his minor daughter, M.R.

6. Health Care Service Corporation, doing business as Blue Cross and Blue Shield of Illinois (hereafter "BCBS"), is the claims administrator of the Plan, and is responsible for deciding

2

what claims are covered by the Plan, and for communicating to participants and beneficiaries whether the claim will be considered medically necessary in pre-authorization and pre-service clinical reviews.

## JURISDICTION AND VENUE

7. The Court has general subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it arises under ERISA—a law of the United States—and specifically pursuant to 29 U.S.C. §§ 1132(e)(1) and 1132(f), which give the District Court jurisdiction to hear civil actions brought pursuant to 29 U.S.C. § 1132(a).

8. At all relevant times, the Plan was administered in the Northern District of Illinois, and the Plan has a forum selection clause requiring any litigation under the Plan take place in the Northern District of Illinois. Venue is thus proper in the United States District Court for the Northern District of Illinois. 29 U.S.C. § 1132(e)(2).

9. The ERISA statute provides a mechanism for administrative or internal appeals of benefit claim denials at 29 U.S.C. § 1133. All required avenues of appeal to exhaust the administrative claim review process have been completed, and this matter is ripe for litigation.

## STATEMENT OF FACTS

10. Plaintiff is a participant under the Plan, and at all relevant times elected coverage under the Plan for his minor daughter, M.R., a covered beneficiary. As a covered beneficiary under the Plan, M.R. was entitled to payment of medical benefits covered by the Plan.

11. M.R. suffers from Adolescent Idiopathic Scoliosis of the Thoracic Spine.

12. M.R.'s doctors recommended she undergo vertebral body tethering procedure to address her scoliosis with curvature of over 50 degrees.

13. M.R., through her doctor, requested the Plan's claim administrator, BCBS, conduct a pre-service clinical review for approval of the surgery and three-day hospital stay to take place from January 12–14, 2024.

14. On January 5, 2024, M.R., through her doctors, faxed in to BCBS her medical records showing her diagnosis and treatment thereof.

15. On January 10, 2024, BCBS conducted a clinical review to determine whether the procedure was medically necessary and consistent with BCBS's medical policies, and concluded it was. BCBS communicated to M.R. and M.R.'s doctor the procedure and hospital stay for January 12–14, 2024 were approved, and BCBS determined the surgery and hospital stay were medically necessary. (Ex. 1).

16. On January 16, 2024, M.R.'s doctor's office called BCBS to verify if the surgery and hospital stay would be covered, providing the CPT code for the surgery, and BCBS advised both the surgery and hospital stay would be covered. BCBS specifically advised an exclusion did not apply to the procedure and hospital stay. BCBS then provided M.R.'s doctor with a reference number for the call. BCBS maintained a recording of this call and had it transcribed. (Ex. 2).

17. On January 24, 2024, M.R.'s doctor sent a fax to BCBS advising the surgery date had been changed to February 26, 2024, and requesting BCBS update the authorization.

18. On January 24, 2024, BCBS communicated to M.R. and M.R.'s doctor the procedure and hospital stay for February 26–28, 2024 were approved and it determined the procedure and hospital stay were medically necessary. (Ex. 3).

19. On February 15, 2024, BCBS began treating vertebral body tethering to treat scoliosis as investigational and experimental, and thus not medically necessary.

4

20. On February 26, 2024, M.R. had the procedure and stayed in the hospital through February 28, 2024.

21. Nobody from BCBS contacted M.R. or her doctor prior to her February 26, 2024 surgery to warn them the surgery would no longer be considered medically necessary because it is investigational or experimental.

22. None of the approval letters advised M.R. or her doctor to do anything further to ensure the claims would be paid.

23. On December 17, 2024, BCBS issued an adverse benefit determination with respect to the surgeons' charges that the surgery was not covered, as it was experimental and investigational. It did, however, cover the hospital stay.

24. Plaintiff appealed the decision on January 30, 2025.

25. On February 10, 2025, BCBS upheld the claim denial, constituting a final administrative decision on M.R.'s claim.

### Count I—Defendants ADM and the Plan
### 29 U.S.C. § 1132(a)(1)(B)—Benefits Due and to Enforce Rights Under the Plan

26. Plaintiff realleges paragraphs 1–25 as if stated herein.

27. Plaintiff alleges this Count in the alternative to, and not in addition to, Counts II and III.

28. The Plan provides a mechanism for Clinical Review in advance of incurring a health expense that results in a determination of medical necessity and whether the proposed service meets the claims administrator's medical policies.

29. Whether a procedure is experimental or investigational is part of a medical necessity review.

30. The Plan's benefit booklet provided to Plaintiff, describing the benefits, states medical policies are guides considered by the Claim Administrator when making coverage determinations and lay out the procedure and criteria to determine whether a procedure, treatment, facility, equipment, drug or device is Medically Necessary and is eligible as a Covered Service or is Experimental/Investigational, cosmetic, or a convenience item.

31. Thus a determination a service is Experimental/Investigational is a Medical Necessity determination.

32. The Plan's benefit booklet provided to Plaintiff, describing the benefits, states that once the claims administrator makes a medical necessity decision on a pre-service clinical review, the decision is not subject to retrospective review after the participant or beneficiary incurs the health expense.

33. On January 24, 2024, BCBS determined the claim was approved and was medically necessary.

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in favor of the Plaintiff and against Defendants ADM and the Plan, and award benefits for payment of M.R.'s surgery on February 26, 2024;

B. That the Court award Plaintiff reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g) and the costs of suit; and

C. That the Plaintiff recovers any and all other relief to which Plaintiff may be entitled.

### Count II—Defendants BCBS and the Plan
### Equitable Estoppel

34. Plaintiff realleges paragraphs 1–25 as if stated herein.

35. Plaintiff pleads this Count in the alternative to, and not in addition to, Counts I and III.

36. The Plan's terms regarding whether BCBS considers vertebral body tethering surgery to treat scoliosis medically necessary or experimental and investigational are unclear.

37. BCBS knew all relevant facts about the proposed surgery before communicating it was approved and no exclusion applied, including the CPT code or codes, and the diagnosis the surgery would treat.

38. BCBS, acting on behalf of the Plan, made one or more representations that the surgery would be approved, was medically necessary, and no exclusions applied.

39. M.R. and Plaintiff reasonably relied on these representations to their detriment by having M.R. undergo the surgery and incur the medical expense of the surgery.

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in favor of the Plaintiff and against Defendants BCBS and the Plan, and estop them from denying payment for M.R.'s surgery on February 26, 2024;

B. That the Court award Plaintiff reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g) and the costs of suit; and

C. That the Plaintiff recovers any and all other relief to which Plaintiff may be entitled.

### Count III—BCBS
### 29 U.S.C. § 1132(a)(3)—Breach of Fiduciary Duty

40. Plaintiff realleges paragraphs 1–25 as if stated herein.

41. Plaintiff pleads this Count in the alternative to, and not in addition to, Counts I and II.

7

42. BCBS is a plan fiduciary with respect to communicating with participants and beneficiaries, as well as doctors acting on their behalf, regarding whether procedures will be covered, are medically necessary, and whether the procedure is considered experimental or investigational.

43. When BCBS approved the claim on January 24, 2024, it did not disclose to M.R. or her doctor that anybody should contact BCBS again prior to surgery to confirm whether the surgery would still be covered.

44. After communicating to M.R. and her doctor that the surgery was approved and medically necessary, and no exclusion applied, BCBS knew M.R. intended to have that surgery and would proceed with it based on BCBS's representation.

45. After BCBS implemented a policy treating vertebral body tethering surgery to treat scoliosis as experimental or investigational, BCBS had an affirmative duty to communicate to M.R. and/or her doctors they could no longer rely on BCBS's earlier representations.

46. BCBS breached this fiduciary duty by failing to notify M.R. and/or her doctors that the vertebral body tethering on February 26, 2024 would no longer be covered as it was considered experimental or investigational.

47. BCBS's breach of its duty caused M.R. harm because she proceeded with a surgery and incurred considerable expenses she would not have incurred but for BCBS's breach.

48. Other treatment options to treat scoliosis exist, such as bracing, that are not considered experimental or investigational by BCBS.

49. Had BCBS communicated to M.R. and/or her doctors the vertebral body tethering surgery would be considered experimental or investigational, M.R. would have either tried covered treatment options, or attempted to obtain alternative health insurance that would cover the surgery.

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in favor of the Plaintiff and against Defendant BCBS, and award Plaintiff make whole monetary relief for the expenses incurred due to M.R.'s February 26, 2024 vertebral body tethering surgery, or estop BCBS from not paying M.R.'s provider's bills;

B. That the Court award Plaintiff reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g) and the costs of suit; and

C. That the Plaintiff recovers any and all other relief to which Plaintiff may be entitled.

## Count IV—ADM
### 29 U.S.C. § 1132(c)—Failure to Provide Plan Documents Upon Request

50. Plaintiff realleges paragraphs 1–25 as if stated herein.

51. On August 29, 2025, Plaintiff sent a request to ADM pursuant to 29 U.S.C. § 1024(b)(4) for all documents and instruments governing the health benefits under the Plan.

52. ADM received that request on September 3, 2025.

53. On October 3, 2025, Plaintiff sent a follow-up letter to ADM advising he previously requested the Plan documents, and reiterated his request to provide the Plan's documents and instruments governing the Plan.

54. ADM has still not complied with Plaintiff's request for plan documents.

55. Under 29 U.S.C. § 1132(c), if an administrator does not comply with a request for documents pursuant to 29 U.S.C. 1024(b)(4) within 30 days of the request, the administrator is liable for $110 per day for such failure, unless the failure results from matters reasonably beyond the control of the administrator.

9

56. Plaintiff sent the request to ADM at the address listed on ADM's most recently filed 5500 for the Plan, and the United States Postal Service confirmed ADM's receipt of the request.

57. There are no matters beyond ADM's control that prevented it from complying with Plaintiff's request.

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in favor of the Plaintiff and against ADM, and award Plaintiff $110 per day in penalties commencing October 4, 2025;

B. That the Court award Plaintiff reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g) and the costs of suit; and

C. That the Plaintiff recovers any and all other relief to which Plaintiff may be entitled.


Respectfully Submitted,

/s/ Michael Bartolic
Attorney for the Plaintiff

Michael Bartolic
Bartolic Law
180 W. Washington Street Suite 700
Chicago, Illinois 60602
Tel: (312) 635-0948